UNITED STATES of America, Appellee,

v.

**Kenneth O'DAY, Jr., Appellant.**

**In re: UNITED STATES of America**

v.

**John DOE # 400, Grand Jury No. 81–1.**

**No. 81–2042.**

United States Court of Appeals, Fourth Circuit.

Submitted Nov. 16, 1981.

Decided Nov. 19, 1981.

Gerald Bruce Lee, Alexandria, Va., on brief for appellant.

Justin W. Williams, U. S. Atty. and Karen P. Tandy, Asst. U. S. Atty., Alexandria, Va., on brief, for appellee.

Before BUTZNER, MURNAGHAN and ERVIN, Circuit Judges.

MURNAGHAN, Circuit Judge:

In view of the exigencies of time which have applied, we issued an order on November 18, 1981 disposing of the appeal by affirming the decision of the United States District Court for the Eastern District of Virginia.

We now set forth the reasons for our action.

In the United States District Court for the Eastern District of Virginia, appellant Kenneth O'Day, Jr. was called as a witness to testify in grand jury proceedings. United States District Judge Albert V. Bryan, Jr., pursuant to 18 U.S.C. § 6003, on October 13, 1981 granted O'Day immunity for the testimony he was called upon to give.

O'Day, a non-target witness, in an appearance on October 13, 1981 refused to

answer questions concerning the transportation and distribution of marijuana by several individuals. The grounds asserted by O'Day for refusing to testify were claimed First Amendment rights of free association.

On October 14, 1981 at or about 9:00 A.M., Judge Bryan directed O'Day to return to the grand jury room and answer the questions, advising him that the asserted First Amendment rights were not a valid basis for refusal to testify. At about 10:00 A.M. on the same day, O'Day again persisted in refusing to answer questions propounded to him before the grand jury, this time providing no significant explanation for his refusal to do so.[1]

The parties then appeared the same morning before Judge Bryan.[2] O'Day's counsel claimed a right to a five day notice prior to any contempt hearing, relying on F.R.Crim.P. 42(b), 45(d), F.R.Civ.P. 5(a), 5(b) and 6(d) and the decision in *United States v. Alter*, 482 F.2d 1016 (9th Cir. 1973). O'Day's counsel announced his desire for a "full-blown hearing." Judge Bryan stated: "I am perfectly willing, if you will tell me what sort of evidence you intend to adduce." Counsel's reply was: "I'm not required to disclose what my defense is."

Judge Bryan granted a 3½ hour continuance, and reconvened the contempt hearing at 3:00 P.M. on October 14, 1981. O'Day there testified:

*Direct*

Q  And, did you have occasion to find Witness Exhibit Number One [a device asserted to be employable in electronic surveillance]?

A  Yes, I did.

Q  Would you describe to the Court under what circumstances you located this thing?

A  I found it laying behind my wife's tomato patch right underneath the incoming telephone junction box to my home.

Q  Was it connected?

A  It was not connected at the time.

Q  All right.

Have you had occasion to have that device examined by anyone?

A  Yes, I have.

Q  Would you describe for the Court who and under what circumstances?

A  I took it—I hand-carried it myself to Martin Kaiser, who is an electronics expert, and he gave me the evaluation of what it is and what it's used for and how it's used.

He tested it himself and assured me that it worked, and he was trying to identify it at the time, but he didn't have any catalogues—

Q  (Interposing) When he demonstrated it for you, what did he do?

A  He hooked it into a tape deck, and you have to hook it up the right way on the telephone lines; and when you do, when the phone comes off the hook it automatically turns the tape deck on.

Q  Did you give anybody permission to put any device like that near your house?

A  No, I didn't.

Q  Do you have any knowledge whether or not the Government did that?

A  I don't have any knowledge that they did it.

Q  All right.

Do you have any belief that the Government was responsible for it?

A  Well, yes, I certainly believe somebody did it.

Q  That doesn't answer my question—

Q  All right. What's the legal basis upon which you're refusing to answer the question?

A  I just told you.

Q  I'm sorry, the legal basis, Mr. O'Day.

A  I just told you.

---

1.  *E.g.*:

> Q  Mr. O'Day, did you have an opportunity to confer with your attorney?
> A  Yes, ma'am.
> Q  Have you ever flown with Bill Dickerson?
> A  I refuse to answer that question. I told you yesterday that the guy was a good friend of mine and he's dead.

2.  A motion for recusal of Judge Bryan was made and denied.

**A** (Interposing) I believe the Government did it.

MR. LEE: I have no further questions.

. . . .

*Cross*

**Q** Mr. O'Day, why do you believe the Government did it?

**A** Well, I found it after I was arrested on the 25th, and I have reason to believe—somebody had to do it. And, I don't think that it was just somebody walking down the street decided to do it. I mean—

**Q** (Interposing) So, it's just a wild guess on your part that it was the Government?

**A** I wouldn't call it a wild guess.

**Q** What basis do you have other than the fact that you had been arrested?

**A** The fact that I'm here.

**Q** What other basis do you have to believe the Government was responsible for that device?

**A** None. I can't prove it. You're not going to tell me that you put it there.

Thereupon Judge Bryan made a finding that O'Day was guilty of contempt pursuant to 28 U.S.C. § 1826 and ordered him incarcerated until he purged the contempt by testifying or until the expiration of the grand jury's term which is due to occur on June 30, 1982.

An appeal was filed on October 20, 1981. It had, in light of the language of 28 U.S.C. § 1826, to be disposed of as soon as practical and in all events not later than thirty days (i.e. by November 19, 1981) from the filing of the appeal.

The gravamen of O'Day's assertion of a right to refuse to testify is the discovery by O'Day of a disconnected electronic eavesdropping device outside his residence, lying on the ground in the vicinity of a telephone junction box. The government provided affidavits by two agents engaged in the in-

vestigation to which the grand jury proceedings were directed. The third affidavit came from the Assistant United States Attorney participating in the presentation of the matter to the grand jury. The affidavits were to the effect that checks with government agencies [3] established that no electronic surveillance of O'Day had been instituted. Furthermore, they contained sworn statements that the grand jury questions propounded to O'Day had been reviewed and none were the product of or otherwise associated with or derived from any electronic surveillance.

At the 3:00 P.M. contempt hearing on October 14, 1981, O'Day's counsel advanced for the first time the claim that he wished to present evidence that an electronic surveillance device had been discovered by O'Day and needed a continuance in order to permit the obtention of expert witness testimony.

Judge Bryan accepted a proffer from O'Day's counsel that expert testimony would have been forthcoming to the effect that the device which O'Day claimed to have discovered would be capable of functioning to intercept telephone conversations.

O'Day acknowledged in his testimony that he had no basis for establishing that the government was responsible for the placing of the bugging device.

O'Day on appeal has raised, in a variety of forms, the contention that his showing with respect to the bugging device necessitated reversal of the October 14, 1981 order on the grounds that his refusal to testify was justified and hence not contemptuous. The argument is made that the court failed to insure that the interrogation of O'Day was not derived from unlawful electronic surveillance for the following reasons:

A. The Witness Produced Sufficient Evidence of Illegal Electronic Surveillance to Sustain His "Just Cause" Defense

---

**3.** The Federal Bureau of Investigation, the Bureau of Alcohol, Tobacco and Firearms, the Drug Enforcement Administration, the Internal Revenue Service, the Bureau of Customs, the Virginia State Police, and the offices of the United States Attorneys for the District of Maryland and for the Eastern District of Virginia.

B. The Government's Response Is Equivocal and Insufficient in Law. A Specific Denial Is Called For In The Face of the Witness' Specific Allegation

C. Where As Here the Witness Has Produced Specific Proof of Unlawful Surveillance The Government Is Obliged to Conduct Further Inquiry and to Amplify Its Response with Live Testimony

D. The Government Affidavits In This Case Are Totally Defective and Live Testimony of the Affidavits Subject to Cross-Examination Is Required

E. In View of the Number of Agencies and Investigators Involved in this Case, the Government Is Required to Poll Its Agents Regarding the Witness' Specific Allegations

F. When the Witness Provides Evidence of Unlawful Surveillance, the Burden of Proof Shifts to the Government to Come Forward with Clear and Convincing Evidence Negating the Witness' Allegations

He seeks to make related due process arguments contending that he was not given adequate notice of the contempt hearing, opportunities to consult with counsel, to subpoena witnesses, and to cross-examine witnesses, stating in that regard:

A. A Finding of Unlawful Electronic Surveillance Constitutes "Just Cause" for Refusal to Testify Pursuant to 28 U.S.C. 1826(a)

B. A Grand Jury Witness Is Entitled to Notice of A Contempt Hearing Pursuant to Rule 42(b) of the Federal Rules of Criminal Procedure

C. O'Day Was Not Given "Reasonable Time" Within the Factual Context of This Case To Prepare for the Contempt Hearing

D. O'Day Was Deprived of an Unhibited (sic) Adversary Hearing on the Contempt—No Witnesses Were Called By The Government—The Court Limited O'Day's Production of Evidence

E. The Witness Must Be Afforded The Opportunity to Present All Defenses Available to Him at The Contempt Hearing Even If the Evidence Is Not Totally Exculpatory, The Evidence May Be In Mitigation

F. A Grand Jury Witness Is Not Required to Proffer His Defense to Obtain a Hearing as Prescribed By Rule 42(b). The District Court Shifted the Burden of Proof Upon the Witness and Then Limited His Development of the Record at the Contempt Hearing

G. The District Court Decision Should Be Remanded for Further Proceedings

O'Day's efforts are a classic example of an attempt to construct something out of nothing. The affidavits afforded the court an adequate basis for its determination that no governmental electronic surveillance was involved. It is an evident proposition that the capacity to employ bugging devices to intercept telephone conversations of O'Day was by no means confined to the government. Acquaintances of O'Day or even persons unknown to O'Day who may have been targets or connections of targets of the grand jury investigation, to mention but one possibility, may have had strong interests in ascertaining details as to what might be in the mind of O'Day. Or if the farfetched contentions of O'Day were indeed to give rise to the procedural safeguards and delays for which O'Day here contends, targets of the grand jury investigation, simply by planting a bugging device on O'Day's premises, not with the intention actually of using it but simply to create confusion and postponement of the government's efforts to ascertain the relevant facts, could substantially frustrate the grand jury investigation.

While the recent decision of the Court in *Charles Crocker, In the case of: United States of America v. John Doe # 400, In Re Grand Jury Proceedings (Grand Jury*

*No. 81–1),* No. 81–5097,[4] was unpublished, the circumstances of shortness of time for decision by reason of the provisions of 28 U.S.C. § 1826, the strong similarity of the questions, arising as they do by reason of the same grand jury proceeding, and the identity of the counsel representing both O'Day and Charles Crocker satisfy the requirement of Local Rule 18(d)(1) restricting citation of unpublished opinions to situations involving unusual circumstances.

In *Crocker* it was pointed out that:

On January 30, 1981, Crocker retained Lee as his attorney. On the next day, what seemed to be an eavesdropping device was found in the basement of the building in which Lee's law office is located. The apparent bug was discovered near telephone lines, but it was unconnected. Lee also represented to the court that a tape recorder and a tape containing attorney-client information was stolen from his office in January.

During the motions and use immunity hearing, Crocker objected to testifying before the grand jury on the ground that the questioning might be tainted by the fruits of illegal electronic surveillance of Lee's office. The DEA case agent in an affidavit and the prosecutor during the hearing denied any knowledge of electronic surveillance of Crocker or Lee, and represented that the questions to be asked of Crocker were not so tainted. Given these representations and the weak evidence that Lee was actually bugged, the district court properly rejected Crocker's Fourth Amendment objection to testifying.

Slip op. 2–3. Similarly on page 5 of the slip opinion in *Crocker* the Court provided an analysis which refutes O'Day's contention of denial of due process:

Crocker argues that he was denied reasonable notice and an opportunity to be heard, contrary to the requirements of due process. We agree that elementary procedural safeguards are applicable to civil contempt proceedings, *see, e.g., Unit-*

*ed States v. Alter, supra,*[5] but find that Crocker was accorded due process.... After affording Crocker a full opportunity to present his objections to testifying, which are the identical arguments asserted defensively against the contempt citation, the district court granted the government's application and advised Crocker that his refusal to testify would result in a finding of civil contempt. When the contempt proceeding itself was instituted, the district court invited Crocker to offer a defense, but the matter had simply been exhausted during the immunity hearing. Accordingly, we find that the requirements of due process were satisfied.

The points re the nature of the contempt proceeding and the need of greater time for preparation of defenses, for which O'Day claims support in *United States v. Alter,* are simply not reached. As *Alter* recognizes:

The threshold question, however, is whether appellant's allegations of illegal surveillance were adequate to require the Government to affirm or deny.

*Id.* at 1024. O'Day's showing was simply insufficient to make out a *prima facie* indication that the government was in any way involved in electronic surveillance of O'Day.

Accordingly, the finding of contempt and the order of confinement were proper, and Judge Bryan's order is affirmed.

AFFIRMED.

---

4. A case arising from the same grand jury proceedings involved in the present case.

5. 482 F.2d 1016 (9th Cir. 1973).