PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ROLAND A. THOMPSON,
            *Petitioner-Appellant,*

v.

KATHLEEN GREENE; ATTORNEY
GENERAL FOR THE STATE OF
MARYLAND,
            *Respondents-Appellees.*

No. 03-7401

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Catherine C. Blake, District Judge.
(CA-02-2002-CCB)

Argued: February 1, 2005

Decided: October 25, 2005

Before LUTTIG, KING, and SHEDD, Circuit Judges.

---

Vacated and remanded by published opinion. Judge King wrote the
opinion, in which Judge Luttig and Judge Shedd joined.

---

## COUNSEL

**ARGUED:** Frederick Carl Crombie, ARNOLD & PORTER, Wash-
ington, D.C., for Appellant. Ann Norman Bosse, Assistant Attorney
General, OFFICE OF THE ATTORNEY GENERAL OF MARY-
LAND, Baltimore, Maryland, for Appellees. **ON BRIEF:** J. Joseph
Curran, Jr., Attorney General of Maryland, Baltimore, Maryland, for
Appellees.

**OPINION**

KING, Circuit Judge:

Roland A. Thompson appeals the district court's July 2003 dismissal of his petition for habeas corpus relief. *Thompson v. Conroy*, No. 02-2002 (D. Md. July 31, 2003) (the "Opinion"). In that proceeding in the District of Maryland, the Attorney General of Maryland, as counsel for the respondents and as a named respondent (along with Kathleen Greene, the Acting Warden of Maryland's Eastern Correctional Institution), failed to serve Thompson with the exhibits supporting the Attorney General's answer to the petition (the "Exhibits"). The district court, by its Opinion dismissing the petition, declined to compel such service. Opinion at 7-8. We granted Thompson a certificate of appealability ("COA") on whether the lack of service contravened the Due Process and Equal Protection Clauses of the Fourteenth Amendment. As explained below, the Attorney General's failure to serve the Exhibits violated the procedural rules governing service of such exhibits in habeas corpus proceedings. As a result, we vacate and remand without reaching the constitutional issues.

I.

Thompson was convicted by a Maryland state court jury in August 1998 on two counts of second-degree murder and two counts of using a handgun in the commission of a felony.[1] On October 23, 1998, he was sentenced to sixty years in prison. Thompson appealed his conviction to Maryland's Court of Special Appeals, which affirmed on June 16, 1999. *Hackney v. Maryland*, No. 1676 (Md. Ct. Spec. App. 1999). On September 14, 1999, the Court of Appeals of Maryland denied certiorari. *Thompson v. Maryland*, 736 A.2d 1066 (Md. 1999). Thompson filed a petition for state post-conviction relief in the Circuit Court for Baltimore City on June 19, 2000. On December 15, 2000, following an evidentiary hearing, that petition was denied.

---

[1]In brief, the trial evidence established that, in November 1997, Thompson and others met with two men in Baltimore, one of whom possessed a handgun that he sought to exchange for money or drugs. In the ensuing events, the two men were fatally shot and Thompson and his co-defendant were convicted.

*Thompson v. Maryland*, No. 198022021-22 (Md. Cir. Ct. 2000). On April 15, 2002, Thompson's application for leave to appeal the circuit court's ruling was denied by the Court of Special Appeals. *Thompson v. Maryland*, No. 2820 (Md. Ct. Spec. App. 2002).

On June 13, 2002, proceeding pro se, Thompson filed a petition for habeas corpus relief, pursuant to 28 U.S.C. § 2254, in the District of Maryland. He alleged multiple constitutional errors: (1) that his trial counsel had been ineffective for (a) failing to object to the introduction of "other crimes" evidence and (b) failing to move for a separate trial from Thompson's co-defendant; (2) that he had been denied an impartial jury because a juror was asleep during the presentation of evidence; and (3) that the trial court erred by (a) not conducting separate trials of him and his co-defendant, (b) allowing the introduction of other crimes evidence, and (c) permitting the jury to review evidentiary videotapes during its deliberations in the presence of the court's law clerk. On July 31, 2002, in response to Thompson's petition, the district court issued an Order to Show Cause, directing the Attorney General to answer the petition and "to furnish with [the] answer copies of all relevant opinions, transcripts and materials."

On November 4, 2002, the Attorney General filed an answer to Thompson's petition containing twenty Exhibits (collectively, the "Answer").[2] He served the text of his Answer on Thompson, but failed to serve the Exhibits, which included trial and post-conviction hearing transcripts, the parties' state court briefs, and various state court opinions. In the Answer's fifty-two page text, the Attorney General relied on the Exhibits for his contentions on why Thompson was not entitled to habeas corpus relief, devoting more than thirty pages to quotations from them. In serving the Answer's text on Thompson, the Attorney General included only an "index" of the various Exhibits.

On November 25, 2002, Thompson filed a pro se "Motion to Object to Respondent's Answers to Petition for Writ of Habeas Corpus/Order to Show Cause and Request for Production of Documents." He contended therein that he was entitled to be served with the Exhib-

---

[2]In our use herein of the term "Answer," we refer to both the text of the Answer (which was served) and the Exhibits (which were not served).

its and that he could not adequately respond to the Answer without them. On December 4, 2002, the district court ordered Thompson to respond to the Attorney General's assertion that certain of his habeas corpus claims had been procedurally defaulted, but it did not authorize Thompson to address the Answer's contentions on the merits of his claims. The court also noted Thompson's objection to the Attorney General's failure to serve the Exhibits and held the issue in "abeyance." On February 5, 2003, Thompson filed a limited response on the procedural default issue and again asserted that his ability to respond to the Answer was materially hindered by the Attorney General's failure and refusal to serve the Exhibits.

In opposing Thompson's request for the Exhibits, the Attorney General informed the district court that, pursuant to his office policy, he does not serve habeas corpus petitioners with the exhibits to an answer if there are five or more such exhibits. In that event, the exhibits are filed with the court but not served on the petitioner. The Attorney General contended that neither the Rules Governing Section 2254 Cases in the United States District Courts (the "Habeas Rules"), nor any other applicable legal authority, requires service of such exhibits. *See* 28 U.S.C. foll. § 2254. He further asserted that serving habeas corpus petitioners with exhibits was a burdensome endeavor and that, in order to receive the Exhibits, Thompson was first obliged to demonstrate to the court a particularized need for them.

On July 31, 2003, the district court issued its Opinion dismissing Thompson's § 2254 petition. The court ruled that certain of Thompson's substantive claims were without merit while others had been procedurally defaulted.[3] In so ruling, the court relied heavily on the Exhibits, including evidence reflected in transcripts that were neither signed nor certified. In a part of the Opinion entitled "Discovery Mat-

---

[3]More specifically, the court ruled that Thompson's claims regarding ineffective assistance of counsel, the presence of the law clerk during jury deliberations, and part of his claim regarding the introduction of other crimes evidence were without merit. Opinion at 8-23. The court also ruled that Thompson had procedurally defaulted on his claims regarding the denial of an impartial jury, the failure to sever his trial from his co-defendant, and part of his claim regarding other crimes evidence. *Id.* at 4-7.

ters," the court denied Thompson's request for the Exhibits, reasoning that they were "not necessary in explaining why [procedural] default may have occurred." Opinion at 7. The court observed that Habeas Rule 5 did not contemplate a "reply" by Thompson to the Answer, and there was "no reason to believe that 'exceptional circumstances' exist to require yet another round of briefing in this case." *Id.* at 7-8.

Still proceeding pro se, Thompson timely noted an appeal to this Court and applied to the district court for a COA on both the merits of his petition and the Attorney General's failure to serve the Exhibits. He asserted that the Attorney General's failure to serve the Exhibits and the court's denial of his request for them "unconstitutionally infringed upon his due process rights." Thompson also contended that, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court was required to notify him that the Exhibits would be used to decide the merits of his claims, and to provide him an opportunity to rebut them. On September 4, 2003, the district court denied his request for a COA. *Thompson v. Conroy*, No. 02-2002 (D. Md. 2003).

## II.

On May 3, 2004, we granted Thompson a COA on the issue of "whether the Maryland Attorney General has a constitutional procedural due process obligation to serve a habeas petitioner with the exhibits used to support its Answer." Thereafter, on May 26, 2004, we appointed counsel to represent Thompson on appeal. On September 2, 2004, we expanded the COA to include Thompson's claim that the Attorney General's policy on service of such exhibits contravenes the Equal Protection Clause of the Fourteenth Amendment.

We possess jurisdiction in this appeal pursuant to the COA. *See* 28 U.S.C. § 2253(c)(1)(A). Such a COA is issued only when a petition for habeas corpus relief has made a substantial showing of the denial of a constitutional right. *Id.* § 2253(c)(2). Once an appeal is properly before us, however, we are obliged to resolve any non-constitutional procedural matters first, because a reviewing court should "'not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of.'" *Slack v. McDaniel*, 529 U.S. 473, 485 (2000) (quoting *Ashwander v. TVA*, 297 U.S. 288, 347 (1936) (Brandeis, J.,

concurring)); *see also Reid v. Angelone*, 369 F.3d 363, 372 n.5 (4th Cir. 2004) (recognizing that court may grant COA "and then affirm the denial of habeas relief on procedural grounds").

In conducting our analysis, we review de novo the legal rulings of the district court. *Rouse v. Lee*, 339 F.3d 238, 244 (4th Cir. 2003). Pursuant to the COA issued in this matter, we review only the district court's ruling on the Attorney General's failure to serve the Exhibits, and thus we do not assess the merits of Thompson's petition. Because we resolve this appeal on non-constitutional grounds, we need not reach Thompson's constitutional claims.

### III.

At issue in this appeal is whether the Attorney General was obliged to serve Thompson with the Exhibits contained in the Answer. As we have pointed out, when serving an answer on a habeas corpus petitioner, it is the Attorney General's policy and practice not to serve such exhibits if there are five or more of them. The Attorney General contends that this policy is permissible under the Habeas Rules, which, he maintains, do not require service of such exhibits. As explained below, the relevant procedural rules required the Attorney General to serve the Exhibits on Thompson.

### A.

The Attorney General maintains on appeal that the applicable rules of procedure do not mandate service of the Exhibits on Thompson. Indeed, he contends that it is an "open question" whether the rules require that an answer's text be served on a habeas corpus petitioner at all. As explained below, we reject his contentions. Both the Habeas Rules and the Federal Rules of Civil Procedure (the "Civil Rules") specify that exhibits constitute contents of such an answer. And, in light of the Advisory Committee Notes on the Habeas Rules, and the relevant provisions of the Civil Rules and the Local Rules of the United States District Court for the District of Maryland (the "Maryland Local Rules"), service of an answer and its exhibits on a habeas corpus petitioner is plainly mandated.

1.

First, we examine the requirements for an answer to a habeas corpus petition under the Habeas Rules, which govern all habeas corpus proceedings conducted in the district courts. *See* Habeas Rule 1 (providing that the Habeas Rules are applicable to a petition "by a person in custody pursuant to a judgment of a state court"). Habeas Rule 5 describes the mandatory contents of an answer: "There shall be *attached* to the answer such portions of the transcripts as the answering party deems relevant" and "a copy of the petitioner's brief on appeal and of the opinion of the appellate court, if any, shall also be filed by the respondent *with the answer*." Habeas Rule 5 (emphasis added).[4] The Habeas Rules thus view the exhibits contained in a habeas corpus answer to be a *part* of the answer itself, without which a habeas corpus answer must be deemed incomplete.[5]

The Civil Rules also make clear that the written instruments made exhibits to any pleading are a part of the pleading (such as a habeas corpus answer). The Civil Rules are to be applied, "when appropriate," in habeas corpus proceedings "to the extent that they are not

---

[4]During the relevant period, the pertinent provisions of Habeas Rule 5 provided that

> [t]he answer shall respond to the allegations of the petition. . . . There shall be attached to the answer such portions of the transcripts as the answering party deems relevant. . . . If a transcript is neither available nor procurable, a narrative summary of the evidence may be submitted. If the petitioner appealed from the judgment of conviction or from an adverse judgment or order in a post-conviction proceeding, a copy of the petitioner's brief on appeal and of the opinion of the appellate court, if any, shall also be filed by the respondent with the answer.

Habeas Rule 5 (West 2001); *see also Sizemore v. Dist. Ct., 50th Judicial Dist.*, 735 F.2d 204, 207 (6th Cir. 1984) ("[I]t is obvious that the mandatory language of Rule 5 places the burden upon the State . . . to *attach* all relevant sections [of the transcripts] to its answer." (emphasis added)).

[5]Importantly, the district court's July 31, 2002 Show Cause Order required the Attorney General "to furnish with [the] answer copies of all relevant opinions, transcripts and materials," thus echoing the requirements of Habeas Rule 5.

inconsistent with [the Habeas Rules]." Habeas Rule 11; *see also* Civil Rule 81(a)(2) (providing that Civil Rules are applicable in habeas corpus proceedings "to the extent that the practice in such proceedings is not set forth in statutes of the United States [or] the [Habeas Rules] . . . and has heretofore conformed to the practice in civil actions"). Specifically, Civil Rule 10(c) provides that a "copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." *See, e.g.*, *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) ("It would seem to follow [from Rule 10(c)] that if an attachment to an answer is a 'written instrument,' it is part of the pleadings."); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) ("Relying on Rule 10(c), we have held that the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.").

2.

Second, we turn to the applicable requirements for the service of pleadings. Although the Habeas Rules do not explicitly require service of the answer on the petitioner, such service — an elementary step in litigation in our judicial system — was plainly contemplated when the Rules were promulgated by the Supreme Court in 1976, as reflected in the relevant Advisory Committee Notes. It is appropriate for us to rely on the guidance of the Advisory Committee to supplement any deficiency in the explicit provisions of a given Habeas Rule. *See United States v. Vonn*, 535 U.S. 55, 64 n.6 (2002) ("In the absence of a clear legislative mandate, the Advisory Committee Notes provide a reliable source of insight into the meaning of a rule."). The Advisory Committee Notes specify that Habeas Rule 5 "does not indicate who the answer is to be served upon, but it necessarily implies that it will be mailed to the petitioner (or to his attorney if he has one)." Notes to Rule 5 (1976 Adoption).

Moreover, the Civil Rules clearly mandate service on an adversary of pleadings and their contents. Civil Rule 5(a) requires that service be made on all parties not in default of "every pleading subsequent to the original complaint unless the court otherwise orders," including all papers relating to discovery, motions, notices, designation of record on appeal, and other "similar paper[s]."

Finally, the Maryland Local Rules require that service be made of an answer and its exhibits.[6] In pertinent part, the Maryland Local Rules provide that "[a]ll Court papers other than the original complaint must bear a certificate signed by counsel stating that the service required by [Civil Rule] 5(a) has been made." Maryland Local Rule 102(1)(c). Indeed, any submission of more than five exhibits "shall be tabbed and indexed." Maryland Local Rule 105(5)(b). Notably, the Maryland Local Rules only authorize a party to omit the filing of "voluminous exhibits" with the permission of the court. Maryland Local Rule 105(1). Thus, the applicable rules mandate that an answer in a habeas corpus proceeding, along with all of its exhibits, must be served on a petitioner.[7]

---

[6]Under Civil Rule 83, a district court may "make and amend rules governing its practice [that] shall be consistent with" the Civil Rules. In this appeal, there is no assertion that the Maryland Local Rules were inconsistent with the Civil Rules, and they were thus applicable to Thompson's proceedings in the district court.

[7]Our reading of the applicable rules to require a respondent to serve his answer on a habeas corpus petitioner is further supported by the interpretive rule that courts should construe statutes and rules so as to avoid raising constitutional questions. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001) (construing detention provision to contain reasonableness limitation in order to avoid constitutional questions that would otherwise arise). The constitutionality of the Habeas Rules would be placed in serious question if they were read to exempt habeas corpus proceedings from the general service requirements. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950) ("[A]t a minimum [the Due Process Clause] require[s] that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing."). Similarly, to read the Habeas Rules as permitting a respondent to file exhibits that he fails to serve upon a habeas corpus petitioner would essentially allow him to communicate ex parte with the court, contrary to one of the basic tenets of our adversary system. *See Doe v. Hampton*, 566 F.2d 265, 276 (D.C. Cir. 1977) ("[A]s a general rule, ex parte communications by an adversary party to a decision-maker in an adjudicatory proceeding are prohibited as fundamentally at variance with our conceptions of due process.").

3.

The courts to have considered similar issues have concluded that service of an answer's exhibits on a habeas corpus petitioner is mandated. For example, in *Pindale v. Nunn*, a New Jersey district court concluded that "Habeas Rule 5 required [the State] to serve the Answer and the documents attached to and filed with the Answer" on the petitioner. 248 F. Supp. 2d 361, 365 (D.N.J. 2003). In *Pindale*, the State had failed to serve the exhibits to its answer, asserting that the applicable rules did not require such service. In rejecting the State's contention, the court ruled that both Habeas Rule 5 and the Civil Rules required the State to serve its exhibits on Pindale. *Id.* at 365-67.

In a similar situation, a Wisconsin district court, in *Chavez v. Morgan*, dismissed the State's response to a habeas corpus petition for failure to provide an "appropriate answer" which would include "copies of the relevant judgment of conviction, any available and relevant transcripts, and any post-conviction pleadings and decisions," as required by Habeas Rule 5. 932 F. Supp. 1152, 1153 (E.D. Wis. 1996). The court explained that Habeas Rule 5 puts the burden on the *State* to include the exhibits because petitioners are often "prisoners with little knowledge of the pleading requirements in habeas cases and, more importantly, little to no access to the pleadings and other judicial documents which are necessary to determine whether or not they have properly exhausted their state court remedies." *Id.*

The commentators to have addressed this issue also agree that Habeas Rule 5 requires service of a habeas corpus answer on the habeas petitioner, complete with the answer's exhibits. *See* 28 *Moore's Federal Practice* § 671.03[4] (Matthew Bender 3d ed. 1997) (recognizing that "the answer should be served on the petitioner or the petitioner's attorney" and must "set forth" the following: relevant portions of transcripts; briefs filed by petitioner and government; opinions and orders of state courts); 1 Randy Hertz & James S. Liebman, *Federal Habeas Corpus Practice and Procedure* § 19.2 (4th ed. 2001) ("Because Habeas Rule 5 states that 'relevant' portions of the record 'shall be attached to the answer,' any order under Rules 4 and 5 of the Rules Governing § 2254 Cases requiring the state to answer the petition and to serve its answer on the petitioner . . . also presumedly requires the state to serve on the petitioner — whether or not indigent

— the 'attached' portions of the record."). In ruling as we do today, we join these courts and commentators and conclude that the Attorney General is required to serve his Answer, including the Exhibits, on Thompson.[8]

## B.

The Attorney General also raises on appeal three other contentions he made below: (1) that he is not required to serve exhibits on habeas corpus petitioners because they should already possess either the documents or a general knowledge of their contents; (2) that a petitioner can obtain such exhibits by showing a "particularized need" and securing a court order; and (3) that the policy of not serving exhibits on a petitioner when the Attorney General files five or more is justified by "the time and expense of copying, binding and indexing, and delivering documents." Appellees' Br. at 10. Each of these conten-

---

[8]We have previously indicated, by two unpublished decisions, that the Maryland Attorney General is obliged to serve exhibits to his answers on habeas corpus petitioners. First, in *Wright v. Conroy*, we vacated a dismissal of a habeas corpus petition where the Attorney General filed his answer in the district court, but failed to serve seventeen exhibits on the petitioner. *See* No. 02-6296, 2002 WL 1357262, at *1 (4th Cir. June 21, 2002). We remanded with instructions to "ensure that Wright is served with copies of all of the Appellees' exhibits so that he may consider those exhibits in preparing his response." *Id.* at *1-2. In so ruling, we relied upon *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975) (recognizing that pro se litigants must be notified of their right to respond to summary judgment requests). Next, in *Smoot v. Maryland Attorney General*, the Attorney General again failed to serve a petitioner with the exhibits contained in his answer. *See* No. 03-6068, 2003 WL 21855486, at *1 n.* (4th Cir. Aug. 8, 2003). While we resolved the appeal on other grounds, we observed that "the district court erred in its failure to have the State serve Smoot with copies of its exhibits." *Id.*

We recognize, of course, that "[i]n the absence of *unusual circumstances*, this Court will not cite an unpublished disposition in any of its published opinions." Fourth Circuit Local Rule 36(c) (emphasis added). Such circumstances are apparent here: The Attorney General was both a party and counsel in the earlier cases. *See United States v. O'Day*, 667 F.2d 430, 433-34 (4th Cir. 1981) (recognizing "unusual circumstances" where matter involved similar issues and same counsel).

tions borders on the frivolous. As our analysis demonstrates, the applicable rules require the Attorney General to serve a habeas corpus petitioner with the pleadings (including exhibits) that he files with the court. It is irrelevant whether a petitioner can demonstrate need to the court, or whether he already has the documents. Finally, the Attorney General is not entitled to unilaterally decide not to serve such exhibits on the basis that doing so would be unduly burdensome. *See* Maryland Local Rule 105(1) (authorizing party to omit filing of "voluminous exhibits appended to a motion or memorandum" only with court permission).[9]

IV.

Pursuant to the foregoing, we vacate the dismissal of Thompson's petition and remand for such further proceedings as may be appropriate.[10]

*VACATED AND REMANDED*

---

[9]The Attorney General also contends, for the first time on appeal, that if a petitioner does not have the exhibits, he can submit a public information request to the State. Because this contention was not raised below, we need not address it here. *See Dixon v. Edwards*, 290 F.3d 699 (4th Cir. 2002) (observing that appellate courts do not ordinarily consider issues raised for first time on appeal).

[10]We also deny Thompson's request that, on remand, his case be reassigned to a new judge.