MOON, District Judge,
dissenting:
I respectfully dissent.
Preliminarily, I observe that the regulation, properly construed, does not apply to these newspapers. “[T]he parties agree that a majority of the readership of the college newspapers is over the age of twenty-one,” ante at n. 1, and the undisputed statistical evidence in the record supports that agreement. More than half of the students at these universities are over the age of twenty-one, as of course are most faculty and staff. J.A. 464, 470-71, 477, 480. Given that a majority of the readership is over the age of twenty-one, these college newspapers are not “distributed or intended to be distributed primarily to persons under 21 years of age,” as required to be subject to the strictures of 3 Va. Admin. Code § 5-20-40(B)(3). This case could be resolved on that ground without reaching the broader constitutional question. See Ashwander v. Tenn. Valley Auth., 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandéis, J., concurring) (“The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of.”); see also Thompson v. Greene, 427 F.3d 263, 267 (4th Cir.2005) (quoting Ashwander). *592 However, both the district court and the majority reach and address the constitutional question, and so I do as well.[1]
On the merits of the constitutional issue, I think we should affirm. To satisfy the requirement that the regulation “directly advances the governmental interest asserted,” Central Hudson Gas & Elec. Corp. v. Public Serv. Comm’n of New York, 447 U.S. 557, 566, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), the government must demonstrate that the challenged law “alleviate[s]” the cited harms “to a material degree,” Florida Bar v. Went For It, Inc., 515 U.S. 618, 624, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995) (citation omitted); see also Greater New Orleans Broad. Ass’n, Inc. v. United States, 527 U.S. 173, 188, 119 S.Ct. 1923, 144 L.Ed.2d 161 (1999); Pitt News v. Pappert, 379 F.3d 96, 107 (3rd Cir.2004). “This burden is not satisfied by mere speculation or conjecture.” Edenfield v. Fane, 507 U.S. 761, 770-71, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993); Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 555, 121 S.Ct. 2404, 150 L.Ed.2d 532 (2001); Pitt News, 379 F.3d at 107. It is likewise not enough if a law “provides only ineffective or remote support for the government’s purposes,” Edenfield, 507 U.S. at 770, 113 S.Ct. 1792 (quoting Central Hudson, 447 U.S. at 564, 100 S.Ct. 2343), or if there is “little chance” that the law will advance the state’s goal, Lorillard, 533 U.S. at 566, 121 S.Ct. 2404. See also Pitt News, 379 F.3d at 107. Meeting this burden “is critical; otherwise, ‘a State could with ease restrict commercial speech in the service of other objectives that could not themselves justify a burden on commercial expression.’ ” Rubin v. Coors Brewing Co., 514 U.S. 476, 487, 115 S.Ct. 1585, 131 L.Ed.2d 532 (1995)(quoting Edenfield, 507 U.S. at 771, 113 S.Ct. 1792); see also Pitt News, 379 F.3d at 107. In sum, the burden is on the government, and the record here supports the district court’s finding that the government failed to carry its burden.[2]
I am persuaded by an opinion from the Third Circuit dealing with similar facts. *593 Pitt News v. Pappert (written by then-judge Alito) invalidated a Pennsylvania statute that banned “advertisers from paying for the dissemination of ‘alcoholic beverage advertising’ by communications media affiliated with a university, college, or other ‘educational institution.’ ” [3] 379 F.3d at 101. Pitt News ruled that the Pennsylvania statute “founder[ed] on the third and fourth prongs of the Central Hudson test.”[4] Id. at 107. Finding that the third prong of the Central Hudson test had not been met, the Third Circuit observed that the Commonwealth of Pennsylvania had not carried its burden of showing that the statute “had the effect of greatly reducing the quantity of alcoholic beverage ads viewed by underage and abusive drinkers on the Pitt campus....” Id. The court found that the Pennsylvania statute applied
only to advertising in a very narrow sector of the media (i.e., media associated with educational institutions), and the Commonwealth has not pointed to any evidence that eliminating ads in this narrow sector will do any good. Even if Pitt students do not see alcoholic beverage ads in The Pitt News, they will still be exposed to a torrent of beer ads on television and the radio, and they will still see alcoholic beverage ads in other publications, including the other free weekly Pittsburgh papers that are displayed on campus together with The Pitt News. The suggestion that the elimination of alcoholic beverage ads from The Pitt News and other publications connected with the University will slacken the demand for alcohol by Pitt students is counterintuitive and unsupported by any evidence that the Commonwealth has called to our attention.

Id.

Here, as in Pitt News, “the Commonwealth relies on nothing more than ‘speculation’ and ‘conjecture.’ ” Id. at 107-08. Under the third prong of a Central Hudson analysis, I disagree with the finding that “the link between § 5-20-40(B)(3) and decreasing demand for alcohol by college students [is] amply supported by the record.” Ante at 590. The evidence in the record indicates such a link is speculative, at best.[5] Nor am I persuaded by “the fact *594 that alcohol vendors want to advertise in college student publications” and that alcohol vendors would not “spend their money on advertisements in” college student publications “if they believed that these ads would not increase demand by college students.” Ante at 590. The Board’s justification for the regulation is not to reduce general “demand by college students,” a significant number of whom are of legal age to imbibe, but to reduce “underage and abusive drinking among college students.” Appellants’ Br. at 2 (emphasis added). The regulation not only impermissibly infringes upon the constitutional rights of adults (with the result of limiting the adult readership to receiving only speech that the Commonwealth deems appropriate for persons under the age of twenty-one), it also infringes upon the rights of those readers who are not yet twenty-one, who nonetheless have a protected interest in receiving truthful, non-misleading information about a lawful product that they will soon have the legal right to consume. And of course the advertisers have the right to communicate such information.
As for the fourth prong under Central Hudson, I acknowledge that § 5-20-40(B)(3) contains exemptions that permit restaurants to advertise “the presence and type of alcohol they serve.” Ante at 591. Indeed, the poor “fit” between the regulation and the Commonwealth’s asserted goal is belied by what § 5-20-40(B)(3) permits. Lorillard, 533 U.S. at 555, 121 S.Ct. 2404; Greater New Orleans, 527 U.S. at 188, 119 S.Ct. 1923; West Virginia Ass’n of Club Owners and Fraternal Serv. Inc. v. Musgrave, 553 F.3d 292, 305 (4th Cir.2009); Pitt News, 379 F.3d at 108. Although the regulation prohibits advertising of prices, brands of alcohol, and names of specialty drinks, it allows promotions of “beer,” “wine,” and “mixed beverages” to appear in the very same newspapers that are allegedly “targeted at students under twenty-one.” Ante at 591. It is inconsistent to maintain that a regulation that permits advertisements for “beer night” or “mixed drink night” “in reference to a dining establishment” forms a reasonable fit with the goal of curbing underage or excessive drinking merely because it forbids advertisements for keg delivery, “mojito night,” or the “Blacksburg Wine Festival.”[6] J.A. 73, 74. Indeed, the Supreme Court has pointed to this sort of internal inconsistency in striking down advertising regulations under the third prong of a Central Hudson analysis. See Greater New Orleans, 527 U.S. at 190, 119 S.Ct. 1923 (observing that a ban on broadcasting *595 lottery information was “so pierced by exemptions and inconsistencies that the Government cannot hope to exonerate it.”); Coors Brewing, 514 U.S. at 490, 115 S.Ct. 1585 (the government’s “anecdotal evidence and educated guesses” do not “overcome the irrationality of the regulatory scheme,” which prohibited alcohol content information in labeling but not in advertising). An attempt to rationalize these inconsistencies, defending them on the ground that the regulation “is not a complete ban on alcohol advertising in college newspapers,” ante at 590 (emphasis added), may state an accurate observation; however, the statement is wholly unresponsive to the requirements of Central Hudson. It fails to disguise the fact that there is no empirical support for banning one type of advertisement but not the other.
I disagree with the finding that § 5-20-40(B)(3) is “sufficiently narrow” because it applies to “campus publications targeted at students under twenty-one” and “does not, on its face, affect all possible student publications on campus.” Ante at 591. While the latter observation may be true, the former is not. There is no evidence that these newspapers are “targeted at students under twenty-one.”[7] The record reveals that the majority of the readership of these newspapers is of legal age to drink. Accordingly, under the fourth step of the Central Hudson test, the regulation here, like the Pennsylvania statute in Pitt News, is not “a means narrowly tailored to achieve the desired objective,” Lorillard, 533 U.S. at 555, 121 S.Ct. 2404 (quotations omitted), given that it “is both severely over-and under-inclusive,” Pitt News, 379 F.3d at 108 (observing that “more than 67% of Pitt students and more than 75% of the total University population is over the legal drinking age”).
True, the regulation need not be “the single best disposition,” but only “one whose scope is in proportion to the interest served.” Musgrave, 553 F.3d at 305. However, a commercial speech restriction must be “ ‘a necessary as opposed to merely convenient means of achieving’ ” the Commonwealth’s interests, and “the costs and benefits associated with” the restriction must be “ ‘carefully calculated.’ ” Musgrave, 553 F.3d at 305 (citations omitted; emphasis added). Here, the scope of § 5-20-^40(B)(3), and its impact on protect *596 ed commercial speech, are far out of proportion to the interest served, and the record indicates that “the Commonwealth can seek to combat underage and abusive drinking by other means that are far more direct and that do not affect the First Amendment.”[8] Pitt News, 379 F.3d at 108. In short, the advertising ban here offers “only ineffective or remote support,” not a direct means, to combat underage and abusive drinking. Central Hudson, 447 U.S. at 564, 100 S.Ct. 2343; Edenfield, 507 U.S. at 770, 113 S.Ct. 1792; Pitt News, 379 F.3d at 107.
In my view, the regulation cannot withstand constitutional scrutiny under Central Hudson. It is objectionable that the Commonwealth’s rationale for the regulation applies only to underage and abusive drinking, while the regulation itself applies much more broadly. In free speech cases, it is dangerous and unwise to sustain broad regulations for narrow reasons. Central Hudson confirms this reasoning, recognizing that a regulation restricting commercial speech must be “ ‘narrowly drawn.’ ” 447 U.S. at 565, 100 S.Ct. 2343 (citation omitted). Section 5-20-40(B)(3) fails to “directly advanee[ ] the governmental interest asserted” and is “more extensive than is necessary to serve that interest.” Central Hudson, 447 U.S. at 566, 100 S.Ct. 2343. I would therefore affirm the judgment below.

. The Board argued before the district court that "the regulation 'is no longer at issue' " because "the ABC Department has not enforced [the regulation] since the filing of the instant suit” and "the ABC Department intends to implement a committee to examine the advertising regulations.” J.A. 82. The district court observed that "[t]he regulation ... remains promulgated in the Virginia Administrative Code,” and determined that "voluntary cessation of enforcement, even with the intent to reconsider the merits of the regulation,” did not render the regulation moot, given that the Board "could elect to enforce [the regulation] at any time” and "any intention to repeal the regulation is, at best, speculative.” Id. As the majority notes, "regardless of whether § 5-20-40-(B)(3) applies to these college newspapers, they have a sufficient credible fear of prosecution under this regulation.” Ante at n. 1. Nonetheless, it is my opinion that the better approach would be to avoid the constitutional question, providing relief " 'no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.' ” Virginia Soc’y for Human Life, Inc. v. FEC, 263 F.3d 379, 393 (4th Cir.2001) (quoting Califano v. Yamasaki, 442 U.S. 682, 702, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979)). Were we to hold that the regulation does not apply to these newspapers, the state would be barred from further attempts to enforce the regulation against them. See, e.g., State Water Control Bd. v. Smithfield Foods, Inc., 261 Va. 209, 214-15, 542 S.E.2d 766 (2001) (final judgment on the merits of a claim in federal court precludes the parties from further litigation on that claim in state court).

. The district court found the government's evidence speculative. J.A. 92-96. For example, the district court observed that the Board’s expert "offers no rationale or evidence, beyond conjecture, to support his claim as to the singularity of a college publication .... [H]is insight ignores the common sense reality that college students now live in a multimedia environment ..., all of which display uncensored alcoholic advertisements.” J.A. 95-96.

. To be sure, the statute at issue in Pitt News did not contain the exemptions allowed by § 5-20-40(B)(3); however, as I explain infra, those exemptions constitute inconsistencies that, under a Central Hudson analysis, further undermine the legitimacy of § 5-20-40(B)(3).

. Pitt News also found the Pennsylvania statute "presumptively unconstitutional because it targets a narrow segment of the media....” 379 F.3d at 105. Having broached the constitutional issue, I would embrace also the alternative argument that the regulation unjustifiably targets a specific segment of the media.

. The newspapers’ expert concluded that "no evidence exists to support a substantial or material effect of a ban of alcohol advertising in college newspapers.... Brand advertising only affects brand sales (or vice versa), and market-wide demand for alcohol is not stimulated by advertising.” J.A. 486. And, although the Board’s expert reached the opposite conclusion, an examination of his published articles and his deposition testimony reveals that there is no evidence that the regulation directly and materially advances the goal of diminishing underage or abusive drinking by college students. Indeed, the Board's expert has published the statement that "[t]here is ... very little empirical evidence that alcohol advertising has any effect on actual alcohol consumption.” J.A. 310-11, 326. The Board’s expert has also acknowledged that a ban on advertising in one medium generally results in greater advertising saturation in other media or forms of marketing. J.A. 343, 350.
Moreover, as the district court recognized, the regulation has been on the books, altered over time to reflect changes in the legal drinking age, since the repeal of Prohibition. J.A. 84, 93. Yet, as the Commonwealth implicitly concedes, underage and abusive drinking by college students has not diminished since the *594 enactment of this regulation; rather, the evidence demonstrates that the problem has grown and exacerbated over time, despite the decades-old restriction. J.A. 93. This suggests to me that the regulation does not materially advance the Commonwealth’s purported interest in curbing underage or excessive drinking. J.A. 93-94.

. Nor does the regulation form a reasonable fit to its goal insofar as1 it prohibits advertisements for national brands, considering the heavy promotion of these products in other media, including print media, available to college students regardless of whether they are of legal age to drink. According to the Board, however, “the alcohol industry" restricts “advertisement of alcoholic beverages to media where at least 70% of the audience is reasonably expected to be over the age of 21.” Appellants' Reply Br. at 10; J.A. 359. The Board thus contends that its regulation "is not about brand advertising,” but "is about bars and grocery stores, drink specials and discounts, intended to attract purchasers. — not to a particular brand, but to a particular outlet or venue, or even just off campus— to locations where alcohol will be sold.” Id. (emphasis added). Yet the exemptions in the regulation permit a “dining establishment,” i.e., a “particular outlet or venue,” to promote “beer night” or "mixed drink night."

. As I have already observed, the parties agree that a majority of the readership of the college newspapers is over the age of twenty-one, and the undisputed statistical evidence in the record supports that agreement. J.A. 464, 470-71, 477, 480. A majority of the students at these universities are over the age of twenty-one, as of course are most faculty and staff. Id.
Appellants argue that "[t]he intended audiences of the UVA and Va. Tech student newspapers include a relatively large population of graduate and professional students,” but that, "[w]here the student population of an institution is comprised only of undergraduates, it is likely that its student newspaper’s intended audience is comprised primarily of undergraduate students” who are under age twenty-one. Appellants’ Br. at 23. Although in most circumstances a facial challenge to the constitutionality of a law can succeed only by establishing that there is no set of circumstances under which the law would be valid, i.e., that the law is unconstitutional in all of its applications, Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 449-51, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008), facial challenges "in the First Amendment context” may succeed when a "substantial number” of the law's applications are unconstitutional, id. at 450 n. 6, 128 S.Ct. 1184 (citations omitted). Additionally, "[i]n determining whether a law is facially invalid, we must be careful not to go beyond the statute’s facial requirements and speculate about 'hypothetical’ or 'imaginary’ cases.” Id. at 449-50, 128 S.Ct. 1184 (citation omitted).

. For example, the Board’s own expert has acknowledged the following more direct means: increased taxation on alcohol, which has been empirically verified and quantified as a means to combat underage and binge drinking (‘'[¡Increased taxation is more effective than advertising bans”) (J.A. 21, 319); and counter-advertising to correct students' perceptions about their peers' drinking habits and provide facts as to the dangers of underage and excessive drinking ("increased counteradvertising, rather than new advertising bans, appears to be the better choice for public policy”) (J.A. 351). See 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 507, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996) (plurality opinion of Stevens, J., joined by Kennedy, Souter, and Ginsburg) ("As the State’s own expert conceded, higher prices can be maintained either by direct regulation or by increased taxation.”); id. at 530, 116 S.Ct. 1495 (O’Connor, J., concurring, joined by Chief Justice Rehnquist and Justices Breyer and Souter) ("Rhode Island's own expert conceded that the objective of lowering consumption of alcohol by banning price advertising could be accomplished by establishing minimum prices and/or by increasing sales taxes on alcoholic beverages.”) (internal quotation marks and citation omitted). Indeed, the Board uses the following direct means: publishing "educational pamphlets on the dangers of underage and binge drinking on college campuses, targeted at both underage students and their parents”; enforcing "its regulations by carefully allocating its limited number of officers to target 'big events that are likely to gather college students’ ”; and giving "grants to colleges and college communities to supplement these targeted efforts.” Ante at 587.